3/11/25, 11:32 PM
Trump returns to office as the first criminal president—but for how long? | University of Michigan News

Case: 25-1158    Document: 00118258247    Page: 1    Date Filed: 03/11/2025    Entry ID: 6705987

# Trump returns to office as the first criminal president—but for how long?

January 20, 2025Jeff Karoub



**EXPERT ANALYSIS**

Will Thomas, assistant professor of business law at the University of Michigan's Ross School of Business, has been keenly and carefully following the legal twists and turns surrounding Donald Trump.

Thomas explores where things stand now that Trump is back in the White House:

"Unprecedented legal entanglements continue to cast a shadow. A New York trial court recently sentenced Trump over 34 felony counts of falsifying business records—crimes stemming from efforts to illegally influence the 2016 presidential election.

"The trial court granted Trump an 'unconditional discharge,' instead of imprisonment, probation or a fine. In essence, New York convicted Trump of multiple crimes but decided not to punish him.



Will Thomas

"Some commentators have pointed out the conviction is still symbolically significant: Trump is now the first—and only—criminal elected to the presidency.

"But wait, not so fast.

"While Trump now wears the label of 'felon,' this may be surprisingly short-lived. His best path to exoneration traces to [Trump v. United States](), a landmark U.S. Supreme Court decision from last summer, which promises to reshape the constitutional framework for constraining the behavior of U.S. presidents. The high court's decision, decided after Trump's New York trial, not only complicates the legal process in his criminal case going forward but may ultimately lead to its reversal.

"The case arose out of a federal indictment against Trump—one concerning his role in causing or contributing to the Jan. 6 insurrection—but the opinion reached far beyond the facts at hand, creating sweeping new protections likely to reshape his ongoing state prosecutions in New York and Georgia. Writing for the majority, Chief Justice John Roberts announced a new constitutional rule: Evidence related to a president's 'official acts' cannot be admitted in subsequent criminal cases unless prosecutors first clear a very high (although still somewhat fuzzy) legal threshold.

"Why does this matter for Trump—his crimes started before he was president. As jurors learned at trial, some of Trump's criminal behavior continued into his first term—and even into the Oval Office, where he took calls with co-conspirators and signed personal checks as part of the underlying scheme. Now, these actions might ultimately count as private, 'unofficial' acts, which means they could feature in his criminal trial.

"The problem for New York is that, according to the Supreme Court, any parsing of 'official' from 'unofficial' must happen before trial. Courts can't rely on traditional mechanisms of evidentiary rulings or jury instruction to decide these issues in a piecemeal fashion during trial itself.

"Yet that traditional, evidentiary approach seems to be precisely what happened at Trump's trial. In fairness, how could the trial court have been expected to follow the Supreme Court's new procedures—Trump v. United States wouldn't be published until months after Trump's trial ended. Regardless, this new framework has placed Trump's New York conviction in the crosshairs, and his legal team has taken aim. Pointing to language in the case, Trump has sought multiple times to have his conviction overturned.

"The trial court rejected those requests, finding that any potential errors at trial were harmless to the ultimate outcome. But with sentencing now completed, the case heads to the New York Court of Appeals, which might be inclined to agree with Trump's team that the Supreme Court's decisions require the conviction be erased. After all, even if the trial court's errors really were minor and didn't impact the jury's ultimate decision, the Supreme Court strongly suggests failing to follow its new framework can never be 'harmless.'

"Regardless of the state appellate courts' decision, Trump v. United States guarantees the Supreme Court will have the last word. Historically, state criminal convictions have been largely insulated from federal judicial oversight, with the Supreme Court intervening only in rare cases involving clear violations of constitutional rights.

"By constitutionalizing issues of evidentiary procedure and requiring pretrial determinations of immunity, the case transforms Trump's New York case into a federal matter—making it all but inevitable the Supreme Court will eventually weigh in.

3/11/25, 11:31 PM	Trump returns to office as the first criminal president—but for how long? | University of Michigan News

Case: 25-1158	Document: 00118258247	Page: 3	Date Filed: 03/11/2025	Entry ID: 6705987

"Indeed, Trump has tried to skip to the end, asking the Supreme Court this month to shortcut New York's appeals courts and take his case now. That would have been extraordinary (and extraordinarily controversial); the high court declined his request.

"Signaling what might be coming, four conservative justices publicly noted their disagreement with this decision. Justices Alito, Gorsuch, Kavanaugh and Thomas—all of whom signed onto the majority opinion in Trump v. United States—all seem ready to take up the issue of Trump's conviction sooner rather than later.

"Taken together, the Supreme Court has set the stage for Trump to challenge his New York conviction. While the opinion was couched in terms of protecting the presidency as an institution, its immediate effect has been to grant Trump a powerful legal lifeline. If things go his way, Trump not only will have avoided punishment for his crimes. But he may well stop being a criminal, too."



23-cv-04984-JSC
United States District Court, Northern District of California

# Equal Emp't Opportunity Comm'n v. Tesla, Inc.

727 F. Supp. 3d 875 (N.D. Cal. 2024)
Decided Mar 29, 2024

Case No. 23-cv-04984-JSC

2024-03-29

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff, v. TESLA, INC., Defendant.

James H. Baker, Kena Cherriece Cador, Roberta Louise Steele, Marcia L. Mitchell, U.S. Equal Employment Opportunity Commission San Francisco District Office, San Francisco, CA, for Plaintiff. Christina Theresa Tellado, Mary T. Vu, Samuel J. Stone, Thomas E. Hill, Holland & Knight, LLP, Los Angeles, CA, Paul Wade Matthias-Bennetch, Holland & Knight LLP, Portland, OR, Raymond A. Cardozo, Reed Smith LLP, San Francisco, CA, Sara A. Begley, Pro Hac Vice, Holland & Knight LLP, Philadelphia, PA, Tyree P. Jones, Jr., Reed Smith, LLP, Washington, DC, for Defendant.

---

JACQUELINE SCOTT CORLEY, United States District Judge

883 *883 James H. Baker, Kena Cherriece Cador, Roberta Louise Steele, Marcia L. Mitchell, U.S. Equal Employment Opportunity Commission San Francisco District Office, San Francisco, CA, for Plaintiff. Christina Theresa Tellado, Mary T. Vu, Samuel J. Stone, Thomas E. Hill, Holland & Knight, LLP, Los Angeles, CA, Paul Wade Matthias-Bennetch, Holland & Knight LLP, Portland, OR, Raymond A. Cardozo, Reed Smith LLP, San Francisco, CA, Sara A. Begley, Pro Hac Vice, Holland & Knight LLP, Philadelphia, PA, Tyree P. Jones, Jr., Reed Smith, LLP, Washington, DC, for Defendant.

### ORDER RE: MOTION TO DISMISS AND MOTION TO STAY

Re: Dkt. Nos. 22, 27 JACQUELINE SCOTT CORLEY, United States District Judge

The Equal Employment Opportunity Commission (the Commission) sues Tesla, Inc. (Tesla) under Title VII of the Civil Rights Act of 1964 for claims arising from Tesla's race-based employment practices. (Dkt. No. 1.)[1] Before the Court is Tesla's motion to dismiss for failure to state a claim and motion to stay pending "virtually identical" state court proceedings. (Dkt. Nos. 22, 27.) Having carefully considered the briefing, and with the benefit of oral argument on March 28, 2024, the Court DENIES Tesla's motions to dismiss and stay.

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

### BACKGROUND

The Commission alleges Tesla has subjected Black employees at its Fremont, California manufacturing facilities (Fremont Factory) to severe or pervasive racial harassment and has created and maintained a hostile, race-based work environment there since May 2015. (*Id*. ¶ 16.) The N-word and other racial slurs, epithets, and stereotyping "permeated Tesla's Fremont Factory."



(*Id.* ¶ 17.) Non-Black managers, non-managerial employees, and temporary workers directly addressed Black employees individually and collectively using the N-word. (*Id.* ¶ 21.) Other race-based slurs and insults were frequently used too. (*Id.* ¶¶ 24-25.) At work, Black employees encountered racist graffiti—including swastikas, death threats, and nooses—on bathroom walls, desks, elevators, and equipment. (*Id.* *884 ¶¶ 26, 28-29.) Black employees describe the use of slurs and racist imagery as "casual and normal," "frequent," "constant," "a regular thing," and occurring "too many times to count." (*Id.* ¶¶ 23, 27.)

Non-Black employees used slurs and epithets openly in high-traffic work areas and hubs. (*Id.* ¶ 33.) Supervisors and managers witnessed racially offensive conduct but failed or refused to intercede. (*Id.* ¶ 34.) Black employees reported the slurs, insults, graffiti, and misconduct to Tesla's human resources, employee relations, and managerial personnel. (*Id.* ¶ 35.) Tesla failed to investigate complaints of racial misconduct, adopt policies or practices to ensure its temporary workforce did not perpetuate racial harassment at the Fremont Factory, or otherwise take remedial action to end the ongoing racial harassment. (*Id.* ¶¶ 37-39.) Tesla's supervisors and human resources officials retaliated against Black employees by changing their schedules, assigning them less desirable duties, writing them up without justification, and firing them within weeks of reporting the ongoing racial harassment and discrimination. (*Id.* ¶¶ 40-43.)

In this enforcement action, the Commission brings hostile work environment and retaliation claims against Tesla under § 706 of Title VII. (Dkt. No. 1 ¶¶ 4, 9, 44-51, 52-57.)

## DISCUSSION

### I. Motion to Stay

Tesla requests a stay under the *Colorado River* doctrine and on the grounds the Commission failed to engage in pre-suit conciliation.

### A. *Colorado River* Doctrine

Generally, as between state and federal courts, the pendency of a state court action is no bar to federal proceedings concerning the same matter. *Ernest Bock, LLC v. Steelman*, 76 F.4th 827, 835 (9th Cir. 2023), *cert. denied*, — U.S. —, 144 S. Ct. 554, 217 L.Ed.2d 295 (2024). However, in *Colorado River*, the Supreme Court recognized "in exceptional circumstances, considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation can support a stay of federal litigation in favor of parallel state proceedings." *Id.* at 836 (cleaned up); *see Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) ("[T]he circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention. The former circumstances, though exceptional, do nevertheless exist."). "[A] stay of federal litigation in favor of state court proceedings is the exception, not the rule. Only the clearest of justifications will warrant a stay, and the circumstances justifying a stay are exceedingly rare." *Ernest Bock, LLC*, 76 F.4th at 836 (cleaned up).

The Ninth Circuit weighs eight factors to determine whether a *Colorado River* stay is justified:



(1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*885 *Id*. Courts apply the factors "in a pragmatic, flexible manner with a view to the realities of the case at hand. The weight to be given to any one factor may vary greatly from case to case." *Id*. at 836-37 (cleaned up). "The underlying principle guiding this review is a strong presumption *against* federal abstention. Any doubt as to whether a factor exists should be resolved against a stay, not in favor of one." *Id*. at 837.

### i. Parallelism

"Parallelism is a threshold requirement for a *Colorado River* stay." *Ernest Bock, LLC*, 76 F.4th at 838.

> When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all.

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). "[T]he decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." *Id*.; *see also Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 278, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988) ("[T]he granting of a *Colorado River* motion necessarily implies an expectation that the state court will resolve the dispute."). Exact parallelism is not required; it is enough if the state and federal proceedings are substantially similar. *Ernest Bock, LLC*, 76 F.4th at 838. "Proceedings are substantially similar when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Goodin v. Vendley*, 356 F. Supp. 3d 935, 944 (N.D. Cal. 2018) (cleaned up); *see id*. ("state and federal proceedings are substantially similar if they arise out the same alleged conduct and seek to vindicate the same rights.").

Tesla insists this action is substantially similar to two state court actions now before Alameda County Superior Court Judge Grillo: *Department of Fair Employment and Housing v. Tesla, Inc.*, Alameda County Superior Court No. 22CV006830 ("Civil Rights Department Case"), and *Vaughn, et al. v. Tesla, Inc., et al.*, Alameda County Superior Court No. RG 17882082 ("Vaughn Case"). In the *Vaughn* Case, filed July 2021, the plaintiffs sue Tesla for race-based harassment and discrimination and failure to prevent race-based harassment and discrimination in violation of California's Fair Employment and Housing Act ("FEHA"). (Dkt. No. 22-9 ¶¶ 63-92.)[2] In the Civil Rights Department Case, filed in March 2022, California's Department of Fair Employment and Housing initiated an enforcement action for group relief against Tesla on behalf of California and aggrieved Black Fremont Factory workers, alleging racial harassment, employment discrimination based on race, retaliation, failure to prevent racial *886 harassment and discrimination, and recordkeeping violations. (Dkt. No. 22-10 ¶¶ 28, 35-192.) Tesla asserts the state court actions are substantially similar to this action because 1) "the putative class in the Vaughn Case and the alleged aggrieved group in the [Civil Rights Department] Case

include all African American workers at the Factory within the statutory periods," and 2) the Commission's complaint is based on the same factual allegations and seeks to vindicate the same legal rights as some claims in the state court actions. (Dkt. No. 22 at 19-20.)

> 2  Tesla requests the Court take judicial notice of the operative complaints in both state court cases. (Dkt. No. 22-5 at 4). A court can take judicial notice of facts "not subject to reasonable dispute" because they are "generally known within the court's territorial jurisdiction" or can be "accurately determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). This includes "undisputed matters of public record, including documents on file in federal and state courts." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012). So, the Court takes judicial notice of the operative complaints in the state court cases as a matter of public record.

The parallelism factor requires Tesla to demonstrate the identified state court actions "will be an adequate vehicle for the *complete* and prompt resolution of the issues between the parties." *Ernest Bock, LLC*, 76 F.4th at 841; *United States v. State Water Res. Control Bd.*, 988 F.3d 1194, 1204 (9th Cir. 2021) ("We have repeatedly emphasized that a *Colorado River* stay is inappropriate when the state court proceedings will not resolve the entire case before the federal court."). If there is any substantial doubt as to whether the state court actions will completely and promptly resolve the issues between the parties, "it would be a serious abuse of discretion to grant the stay or dismissal at all." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28, 103 S.Ct. 927.

The state court actions, regardless of outcome, will not resolve this case. The Commission is not a party to either state court case. Here, the Commission sues Tesla in its own name for violations of Title VII. (Dkt. No. 1 ¶ 9); *see Gen. Tel. Co. of the Nw.*, 446 U.S. at 324, 100 S.Ct. 1698 ("Given the clear purpose of Title VII, the EEOC's jurisdiction over enforcement, and the remedies available, the EEOC need look no further than § 706 for its authority to bring suit in its own name for the purpose, among others, of securing relief for a group of aggrieved individuals."). The Commission's claims are not "merely derivative" of an aggrieved employee's claim, *Waffle House, Inc.*, 534 U.S. at 297, 122 S.Ct. 754, because the Commission "is not merely a proxy for the victims of discrimination." *Gen. Tel. Co. of the Nw.*, 446 U.S. at 326, 100 S.Ct. 1698. Neither state court case involves Title VII claims; instead, both involve FEHA claims. So, the state court actions will not completely and promptly resolve the issues between Tesla and the Commission.

Tesla insists "a federal court considering a Title VII discrimination claim is required to give preclusive effect to a state court judgment on a similar state discrimination claim." (Dkt. No. 22 at 20.) Tesla relies on *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) and *Acuna v. Regents of Univ. of California*, 56 Cal. App. 4th 639, 65 Cal.Rptr.2d 388 (1997) to argue the Commission would be precluded from bringing its Title VII claims after resolution of the state court cases. Both cases involved individual plaintiffs who were barred by res judicata from relitigating in a second forum employment discrimination claims that had failed in the first forum. *Kremer*, 456 U.S. at 463-65, 102 S.Ct. 1883; *Acuna*, 56 Cal. App. 4th at 648, 65 Cal.Rptr.2d 388. A state court judgment dismissing an individual's employment discrimination claims precludes the individual's federal Title VII employment discrimination claims "when the state court's decision would be res judicata in the State's own courts." *Kremer*, 456 U.S. at 463, 485, 102 S.Ct. 1883. But "[i]n California, res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties

in privity with them." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 927 (9th Cir. 2006) (cleaned up). The

887  *887 Commission is not a party in either state court action, and Tesla has not shown the Commission is in privity with any party in either state court action. So, res judicata would not preclude the Commission's Title VII claims against Tesla after resolution of the state court actions.

Tesla fails to demonstrate the parallelism factor because Tesla fails to show the state court actions will completely and promptly resolve the issues between the parties. *Ernest Bock, LLC*, 76 F.4th at 841. A *Colorado River* stay is thus inappropriate in this case because "the state court proceedings will not resolve the entire case before the federal court." *State Water Res. Control Bd.*, 988 F.3d at 1204; *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993) ("Under the rules governing the *Colorado River* doctrine, the existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes the granting of a stay."); *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28, 103 S.Ct. 927 ("If there is any substantial doubt as to [whether the state court actions will be an adequate vehicle for the complete and prompt resolution of the issues between the parties], it would be a serious abuse of discretion to grant the stay or dismissal at all.").

## B. Pre-Suit Conciliation

Tesla also requests a stay on the grounds the Commission "failed to engage Tesla in the pre-suit conciliation required by Title VII and the Supreme Court's decision in *Mach Mining*." (Dkt. No. 34 at 8.) Tesla insists "this Court should stay this proceeding until EEOC has fulfilled its conciliation mandate." (*Id.* at 21.)

Before suing an employer for employment discrimination under Title VII of the Civil Rights Act of 1964, the Equal Employment Opportunity Commission (EEOC or Commission) must first "endeavor to eliminate the alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." Once the Commission determines that conciliation has failed, it may file suit in federal court.

*Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 480, 135 S.Ct. 1645, 191 L.Ed.2d 607 (2015). This means the Commission 1) "must inform the employer about the specific allegation" by describing "both what the employer has done and which employees (or what class of employees) have suffered as a result," and 2) "must try to engage the employer in some form of discussion (whether written or oral), so as to give the employer an opportunity to remedy the allegedly discriminatory practice." *Id.* at 494, 135 S.Ct. 1645. "A sworn affidavit from the EEOC stating that it has performed the obligations noted above but that its efforts have failed will usually suffice to show that it has met the conciliation requirement." *Id.* at 494-95, 135 S.Ct. 1645. But if Tesla presents credible evidence indicating the Commission failed to "provide the requisite information about the charge or attempt to engage in a discussion about conciliating the claim, a court must conduct the factfinding necessary to decide that limited dispute." *Id.* at 495, 135 S.Ct. 1645.

The Commission notified Tesla of its determination there is reasonable cause to believe Tesla violated Title VII

by subjecting a class of Black employees to a hostile work environment and retaliating against a class of employees who engaged in protected activity. The aggrieved persons include all Black employees who were employed at [Tesla's] Fremont, CA facilities at any time since May 29, 2015 to the present, who have been adversely affected by such unlawful employment practices.

*888 (Dkt. No. 22-19 at 2.) So, the Commission informed Tesla of the specific allegations against it and the class of employees who suffered as a result. Between July 2022 and June 2023, the Commission engaged in conciliation efforts with Tesla, including a seven-hour, in-person conciliation session on June 13, 2023. (Dkt. No. 32 ¶¶ 11-17.) So, the Commission tried to engage Tesla in discussions to provide Tesla the opportunity to remedy the allegedly discriminatory practice. *Mach Mining, LLC*, 575 U.S. at 494, 135 S.Ct. 1645 ("[A] court looks only to whether the EEOC attempted to confer about a charge, and not to what happened (*i.e*., statements made or positions taken) during those discussions.") In sum, review of these two requirements demonstrates the Commission engaged in pre-suit conciliation.

Tesla claims the Commission failed to comply with Title VII's conciliation mandate because the Commission "consistently refused to provide Tesla any specific facts or evidence from its investigation." (Dkt. No. 22 at 27.) Without citing any authority, Tesla argues the "details" the Commission provided were insufficient because they failed to "include any facts allowing Tesla to understand what problematic practices it purportedly implemented, and what class of employees suffered as a result, beyond potentially every Black employee at the Fremont facility since 2015." (Dkt. No. 34 at 20.) Not so. The Commission was not required to provide Tesla with facts "allowing Tesla to understand what problematic practices it purportedly implemented" or define the class of employees any further. *See U.S. Equal Emp. Opportunity Comm'n v. MJC, Inc.*, 400 F. Supp. 3d 1023, 1043 (D. Haw. 2019) ("The EEOC was not required to provide Defendants with a list of all its factual allegations during the conciliation process."). The Commission, "to meet the statutory condition, must tell the employer about the claim—essentially, what practice has harmed which person or class—and ***must provide the employer with an opportunity to discuss the matter in an effort to achieve voluntary compliance***." *Mach Mining, LLC*, 575 U.S. at 488, 135 S.Ct. 1645 (emphasis added). Indeed, the Commission "need only 'endeavor' to conciliate a claim, without having to devote a set amount of time or resources to that project. Further, the attempt need not involve any specific steps or measures." *Id*. at 492, 135 S.Ct. 1645 (cleaned up). It is undisputed the Commission provided Tesla an opportunity to discuss the Commission's claims. (Dkt. No. 32 ¶¶ 11-17.)

Tesla insists the conciliation was not "meaningful" or "good faith" on the grounds the Commission did not provide Tesla with enough information to remedy the allegedly discriminatory practices. (Dkt. Nos. 22 at 9-10, 34 at 18-19.) In *Mach Mining*, the Supreme Court expressly rejected imposing a "good faith" requirement on Title VII pre-suit conciliation, ruling "[s]uch judicial review extends too far." *Mach Mining, LLC*, 575 U.S. at 492, 135 S.Ct. 1645; *U.S. Equal Emp. Opportunity Comm'n v. MJC, Inc*., 306 F. Supp. 3d 1204, 1213 (D. Haw. 2018) ("The EEOC is not subject to a 'good faith' bargaining requirement.") A "good faith" requirement does "not properly apply to a law that treats the conciliation process not as an end in itself, but only as a tool to redress workplace discrimination." *Mach Mining, LLC*, 575 U.S. at 491, 135 S.Ct. 1645. So, Tesla fails to show the Commission failed to meet Title VII's pre-suit conciliation requirements.

\* \* \*

Accordingly, Tesla's motion to stay is DENIED.

*889

## II. Motion to Dismiss

Dismissal under Rule 12(b)(6) "may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (cleaned up). For the Commission's challenged claims to survive, the complaint's factual allegations must raise a plausible right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Though the Court must accept the complaint's factual allegations as true, conclusory assertions are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A claim is facially plausible when the plaintiff pleads enough factual content to justify the reasonable inference the defendant is liable for the misconduct alleged. *Id.*

Federal Rule of Procedure 8(a) requires a plaintiff's complaint to give the defendant fair notice of the plaintiff's claims and the grounds on which those claims rest. *Earth Island Inst. v. United States Forest Serv.*, 87 F.4th 1054, 1071 (9th Cir. 2023). "Rule 8's pleading standard is liberal, but still requires that the defendant receives notice as to what is at issue in the case." *Id.* (cleaned up). Rule 8 does not require the Commission to plead specific facts establishing a prima facie case of discrimination to bring employment discrimination claims against Tesla under Title VII. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). "A complaint containing allegations and factual statements that clearly put the defendant on notice that the instant action is based on the defendant's alleged discrimination on a particular protected basis against the charging party and other similarly situated employees beginning at a specific point in time is sufficient to survive a motion to dismiss." *U.S. E.E.O.C. v. Farmers Ins. Co.*, 24 F. Supp. 3d 956, 967 (E.D. Cal. 2014).

Under § 706, the Commission is authorized to bring suit in its own name "to prevent any person from engaging in any unlawful employment practice" prohibited by Title VII. 42 U.S.C. § 2000e-5(a); *see Gen. Tel. Co. of the Nw. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 324, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980) ("Given the clear purpose of Title VII, the EEOC's jurisdiction over enforcement, and the remedies available, the EEOC need look no further than § 706 for its authority to bring suit in its own name for the purpose, among others, of securing relief for a group of aggrieved individuals."). In such actions, the Commission can act as "a proxy for the victims of discrimination" or "to vindicate the public interest in preventing employment discrimination," or both. *Gen. Tel. Co. of the Nw.*, 446 U.S. at 326, 100 S.Ct. 1698.

### A. Hostile Work Environment

To bring a hostile work environment claim, the Commission must show 1) discrimination by an employer on account of membership in a protected group, and 2) the offensive conduct was sufficiently severe or pervasive to alter the conditions of employment. *Sharp v. S&S Activewear, L.L.C.*, 69 F.4th 974, 978 ( 9th Cir. 2023). Individual targeting is not required to establish a Title VII violation; it is enough if such hostile conduct pollutes the victim's workplace, making it more difficult for the victim to do their job, take pride in their work, and desire to stay in their position. *Id*. The Ninth Circuit has "consistently sustained Title VII claims challenging a workplace polluted with insult and intimidation." *Id*. at 979. "When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently *890 severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment, Title VII is violated." *Id.* (cleaned up).

Tesla moves to dismiss the Commission's complaint, arguing it "fails to allege facts sufficient to establish the severity and pervasiveness element necessary to state a hostile work environment claim." (Dkt. No. 27 at 12.) As a threshold matter, Tesla misstates the standard. The question is whether the alleged offensive conduct was sufficiently severe *or* pervasive to alter the conditions of employment. *Sharp*, 69 F.4th at 978. In any event, Tesla claims the Commission fails to meet the severity element on the grounds the complaint fails to 1) identify any member of the alleged group of victims, 2) identify an individual who perpetrated racial harassment, or 3) provide a date for any of the alleged incidents.

"Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as [the N-word] by a supervisor in the presence of his subordinates." *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1116 (9th Cir.2004); *see id.* ("It is beyond question that the use of the [N-word] is highly offensive and demeaning, evoking a history of racial violence, brutality, and subordination. This word is perhaps the most offensive and inflammatory racial slur in English, a word expressive of racial hatred and bigotry."). The Commission alleges exactly this act. (Dkt. No. 1 ¶¶ 21-22, 27, 43.) Since May 2015, non-Black managers, non-managerial employees, and temporary workers have regularly addressed Black current and former Tesla employees stationed at Tesla's Fremont Factory individually and collectively by the N-word, (Dkt. No. 1 ¶ 21); frequently used other racial slurs, epithets, and insults openly in high-traffic work areas, (*id.* ¶¶ 24-25, 33); and graffitied swastikas, nooses, the N-word, death threats and other abusive language and imagery directed at Black people across desks, elevators, bathrooms, and equipment. (*Id.* ¶¶ 26, 28-29); *see Swinton v. Potomac Corp.*, 270 F.3d 794, 817 (9th Cir. 2001) (rejecting the benign characterization of the N-word, "perhaps the most offensive and inflammatory racial slur in English, a word expressive of racial hatred and bigotry." (cleaned up)). Despite awareness of such racial misconduct, Tesla has failed to investigate Black employees' complaints, adopt policies or practices to ensure its temporary workforce did not perpetuate racial harassment at the Fremont Factory, intercede when witnessing racial misconduct, or otherwise take remedial action to end the ongoing racial harassment. (*Id.* ¶¶ 35, 37-39.)

Direct verbal attacks and "the prevalence of graffiti containing a racial slur evocative of lynchings and racial hierarchy are significant exacerbating factors in evaluating the severity of the racial hostility." *McGinest*, 360 F.3d at 1116. The Commission alleges frequent direct verbal racial attacks against Black Tesla employees at the Fremont Factory and the "constant" presence of racist graffiti evocative of lynchings. (Dkt. No. 1 ¶¶ 19-29.) These allegations support an inference the Tesla Fremont Factory has been, since May 2015, "permeated with discriminatory intimidation, ridicule, and insult," sufficient to alter the conditions of Black Tesla employees' employment. *Sharp*, 69 F.4th at 979 ("When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated."). So, the Commission alleges facts sufficient *891 to plausibly establish a hostile work environment claim against Tesla for its racial discrimination against Black employees at the Fremont Factory.

Tesla's argument for dismissal based on the Commission's failure to identify any member of the alleged group of victims fails because the Commission brings this enforcement action in its

own name, (Dkt. No. 1 ¶ 9), so the Commission is not required to identify an aggrieved individual to survive Tesla's motion to dismiss. *See, e.g.*, *Equal Emp. Opportunity Comm'n v. Rosebud Restaurants, Inc.*, 85 F. Supp. 3d 1002, 1005-06 (N.D. Ill. 2015) (finding the Commission is not required to name an aggrieved individual to bring a § 706 action in its own name); *E.E.O.C. v. PBM Graphics Inc.*, 877 F. Supp. 2d 334, 347 (M.D.N.C. 2012) ("[T]he complaint is not deficient for failing to identify the numerous alleged victims of discrimination or setting out the names of specific employees at PBM who expressed a preference for Hispanic temporary workers."). "The EEOC's civil suit was intended to supplement, not replace, the private action." *Gen. Tel. Co. of the Nw.*, 446 U.S. at 326, 100 S.Ct. 1698. Indeed, the Supreme Court has "recognized several situations in which the EEOC does not stand in the employee's shoes." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 297, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002). In *Waffle House*, the Supreme Court ruled a mandatory arbitration agreement between an employer and an employee did not bar the Commission from pursuing victim-specific judicial relief in an enforcement action because an agreement to which the Commission was not a party could not limit the remedies available to the Commission. *Id.* In *Occidental Life Ins. Co. of California v. E.E.O.C.*, the Supreme Court ruled the Commission did not have to comply with state statutes of limitations because "the EEOC does not function simply as a vehicle for conducting litigation on behalf of private parties." 432 U.S. 355, 368, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977). In *Gen. Tel. Co. of the Nw.*, the Supreme Court ruled the Commission's "enforcement suits should not be considered representative actions subject to Rule 23" because the Commission "is not merely a proxy for the victims of discrimination." 446 U.S. at 326, 100 S.Ct. 1698; *see PBM Graphics Inc.*, 877 F. Supp. 2d at 347 ("While a putative class action by an individual would require the naming of at least one plaintiff, it bears noting that EEOC is not bound by the class action pleading rules in its claim under sections 706 or 707.").

Tesla's reliance on *Pioneer Hotel* and *Cazorla* to argue the Commission's complaint must identify aggrieved employees is unavailing. In *U.S. E.E.O.C. v. Pioneer Hotel, Inc.*, the court held "[w]hile an action pursuant to Section 706 without a single identified plaintiff will not lie, the EEOC is not required to identify every aggrieved individual comprising the class." No. 2:11-CV-01588-LRH, 2013 WL 3716447, at *3 (D. Nev. July 15, 2013). But *Pioneer Hotel*'s only authority for this holding is the ruling of a since-overturned case, *Bass Pro Outdoor World*. *Id.*; *see E.E.O.C. v. Bass Pro Outdoor World, LLC*, 884 F. Supp. 2d 499, 520-21 (S.D. Tex. 2012), *on reconsideration*, 35 F. Supp. 3d 836 (S.D. Tex. 2014), *aff'd sub nom. Equal Emp. Opportunity Comm'n v. Bass Pro Outdoor World, L.L.C.*, 826 F.3d 791 (5th Cir. 2016). Moreover, the court order reversing *Bass Pro Outdoor World* acknowledged the text of § 706 "suggests that Commissioner charges perhaps do not need to be filed 'on behalf of' identifiable victims" and found the Commission could bring suit on behalf of unnamed individuals because "Congress wanted the Commission to have all the same rights as private litigants when it brings suit pursuant *892 to § 706." *E.E.O.C. v. Bass Pro Outdoor World, LLC*, 35 F. Supp. 3d 836, 861-62 (S.D. Tex. 2014), *aff'd sub nom. Equal Emp. Opportunity Comm'n v. Bass Pro Outdoor World, L.L.C.*, 826 F.3d 791 (5th Cir. 2016). *Pioneer Hotel* also involved a private individual charging party, whereas the Commission is the charge filer here. 2013 WL 3716447, at *1.

Tesla cites *Cazorla v. Koch Foods of Miss., LLC* to argue the Commission's complaint is required to identify members of the alleged class of victims and allege particularized facts as to those persons and their claims. 2013 U.S. Dist. LEXIS 201174. Three years into the case and after discovery, the *Cazorla* court dismissed with leave to amend the Commission's second amended complaint on the

grounds the Commission failed to plead particularized facts as to the 111 named aggrieved individuals. 2013 U.S. Dist. LEXIS 201174, *23-24. However, *Cazorla* is unpersuasive in light of numerous decisions holding the Commission "is not required to identify or name every potential class member in its complaint" or "plead detailed factual allegations supporting the individual claims of every potential member of a class." *Equal Emp. Opportunity Comm'n v. Geisinger Health*, No. CV 21-4294-KSM, 2022 WL 10208553, at *17 (E.D. Pa. Oct. 17, 2022) (cleaned up); see *Equal Emp. Opportunity Comm'n v. JBS USA, LLC*, 481 F. Supp. 3d 1204, 1216 (D. Colo. 2020) ("[T]he EEOC can give defendant fair notice of its claims, and the grounds upon which they rest, without pleading specific, individualized facts establishing that each charging party is entitled to relief."); *Rosebud Restaurants, Inc.*, 85 F. Supp. 3d at 1005-06 (concluding the Commission can state a § 706 claim without identifying an aggrieved individual); *E.E.O.C. v. United Parcel Serv., Inc.*, No. 09-CV-5291, 2013 WL 140604, at *6 (N.D. Ill. Jan. 11, 2013) (ruling the Commission is not required "to plead detailed factual allegations supporting the individual claims of every potential member of a class. EEOC must merely 'plead factual content that allows the court to draw the reasonable inference' that UPS violated provisions of the ADA as to the unidentified individuals."); *PBM Graphics Inc.*, 877 F. Supp. 2d at 347 ("[T]he complaint is not deficient for failing to identify the numerous alleged victims of discrimination or setting out the names of specific employees at PBM who expressed a preference for Hispanic temporary workers . . . . It is sufficient that the facts, taken as true, allege different treatment among similarly situated workers based on national origin."); *E.E.O.C. v. U.S. Steel Corp.*, No. CIV.A. 10-1284, 2012 WL 3017869, at *10 (W.D. Pa. July 23, 2012) ("*Iqbal* and *Twombly* do not require the EEOC to name all of the potential class members in its Amended Complaint.").

Tesla also raises *E.E.O.C. v. La Rana Hawaii, LLC*, to argue the Commission's complaint fails to state a claim if it does not include the dates of the alleged discrimination or identities of the alleged harassers. 888 F. Supp. 2d 1019 (D. Haw. 2012). In *La Rana Hawaii*, the dates of the alleged discrimination were required to demonstrate one defendant employer was under contract with another defendant employer at the time of the alleged discrimination. 888 F. Supp. 2d at 1046-47. Because the Commission's complaint failed to identify the dates of the alleged discrimination or distinguish between the two defendant employers, the district court was unable to draw the reasonable inference one defendant employer was liable for the misconduct alleged. *Id*. For the same reason, the district court required the Commission to identify the alleged harassers. *Id*. at 1047-48 ("The EEOC must allege specifically what wrongdoing it is assigning *893 to each Defendant."). Here, Tesla is the lone defendant employer. So, the Court can draw the reasonable inference Tesla is "liable for the misconduct alleged" without the dates of the alleged discrimination or identities of the alleged harassers. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

Finally, Tesla relies on *Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189 (9th Cir. 2016), to argue "[b]ecause [the Commission] fails to provide a date for *any* of the incidents alleged in the complaint, those incidents are legally insufficient to state a claim for relief under Section 706." (Dkt. No. 27 at 12.) Title VII requires "a charge shall be filed by or on behalf of the person aggrieved within three hundred (300) days after the alleged unlawful employment practice occurred." *Id*. at 1202. But in *Arizona ex rel. Horne*, the Ninth Circuit "doubt[ed] that the [Commission] is subject to the same strict timing requirements with respect to the exhaustion of remedies in Title VII as a private party before bringing class suit," and did "not address whether the [Commission] is subject to the same strict timing requirements as private litigants." *Id*. at

1202 n.8. And here, the Commission brings this enforcement action in its own name, not on behalf of aggrieved persons. So, *Arizona ex rel. Horne* does not support Tesla's argument the complaint is insufficient for failing to provide the dates of alleged incidents.

\* \* \*

The Commission's factual allegations are sufficient to support the inference the alleged racial harassment was sufficiently severe to pollute Tesla's Fremont Factory and create an abusive workplace for Black employees. *Sharp*, 69 F.4th at 978-79 ("We have consistently sustained Title VII claims challenging a workplace polluted with insult and intimidation."); *see JBS USA, LLC*, 481 F. Supp. 3d at 1219 (denying motion to dismiss the Commission's hostile work environment claim where the complaint "allege[d] that Black, Somali, and Muslim employees were subjected to harassment from management, supervisors, and co-workers, describe[d] the type of harassment that these employees faced, and describe[d] the time frame in which this harassment occurred." (cleaned up)). Accordingly, Tesla's motion to dismiss the Commission's hostile work environment claim is DENIED.

## B. Retaliation

The complaint is not required to plead a prima facie case of retaliation as long as it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz*, 534 U.S. at 508, 122 S.Ct. 992 (quoting Federal Rule of Civil Procedure 8(a)(2)).

> When a plaintiff does not plead a prima facie case, courts still look to the elements of the prima facie case "to decide, in light of judicial experience and common sense, whether the challenged complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."

*Cloud v. Brennan*, 436 F. Supp. 3d 1290, 1300-01 (N.D. Cal. 2020) (cleaned up). To state a cognizable retaliation claim, the Commission must allege facts sufficient to support the inference Black Tesla Fremont Factory employees 1) engaged in activity protected under Title VII, 2) Tesla subjected Black Tesla Fremont Factory employees to adverse employment action, and 3) a causal link exists between the protected activity and the adverse employment action. *Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004).

As to the first element, internal complaints constitute protected activity when a reasonable person would believe the conduct the complaint reports violates \*894 Title VII. *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 963-64 (9th Cir. 2009). The Commission alleges "Black employees reported the slurs, insults, graffiti, and misconduct to Tesla's human resources, employee relations, and managerial personnel." (Dkt. No. 1 ¶ 35.) As discussed above, a reasonable person would believe the alleged racial slurs, insults, graffiti, and misconduct violated Title VII. So, the Commission's allegation Black employees at the Fremont Factory complained to Tesla's management about the alleged harassment is sufficient to support the inference Black employees engaged in a protected activity. Tesla's argument the Commission "alleges **zero** facts to support the 'protected activity' element of its retaliation claim" ignores this allegation. (Dkt. No. 27 at 16.)

As to the second element, an adverse employment action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). "[T]he significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id*. at 69, 126 S.Ct. 2405. "[T]ermination of employment is an adverse employment action." *Little v. Windermere Relocation, Inc.*, 301 F.3d

958, 970 (9th Cir. 2002). The Commission alleges Black employees who complained of the racial harassment were terminated, subjected to schedule changes, assigned less desirable duties, and written-up unjustifiably. (Dkt. No. 1 ¶¶ 40-43.) A Black employee who reported her supervisor "for repeatedly telling Black employees not to stand together and saying that '[N-word]s are lazy,' " was moved to a more demanding part of her assembly line. (*Id*. ¶ 43.) Tesla fired Black employees within weeks of their complaints over the racial harassment, and "fired one Black employee who had opposed harassment right after advising her of Tesla's policy not to retaliate." (*Id*. ¶ 41.) The alleged employment actions by Tesla might have dissuaded a reasonable worker from making or supporting a cause of discrimination. *Burlington N. & Santa Fe Ry. Co*., 548 U.S. at 68, 126 S.Ct. 2405. So, these allegations are sufficient to support an inference Tesla subjected Black Fremont Factory employees to adverse employment actions.

As to the third element, the Commission "may allege direct or circumstantial evidence from which causation can be inferred, such as an employer's 'pattern of antagonism following the protected conduct,' or the temporal proximity of the protected activity and the occurrence of the adverse action." *Cloud*, 436 F. Supp. 3d at 1301 (cleaned up); *see Porter v. California Dep't of Corr*., 419 F.3d 885, 895 (9th Cir. 2005) ("Although a lack of temporal proximity may make it more difficult to show causation, circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to the inference." (cleaned up)); *see also Pardi v. Kaiser Found. Hosps*., 389 F.3d 840, 850 (9th Cir. 2004) ("When adverse employment decisions closely follow complaints of discrimination, retaliatory intent may be inferred."). "[C]ausation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air, Inc*., 281 F.3d 1054, 1065 (9th Cir. 2002). "Courts have held that a 3-month gap is enough to give rise to a plausible inference of causation at the pleading stage, but 9 months is too far apart to give rise to a plausible inference of causation." *Lacayo v. Donahoe*, No. 14-CV-04077-JSC, 2015 WL 3866070, at *12 (N.D. Cal. June 22, 2015). The Commission alleges Tesla fired Black Fremont Factory *895 employees within weeks of their complaints about the racial harassment, reassigned a Black employee who reported her supervisor's racial harassment to a more demanding part of her assembly line, and repeatedly wrote-up another employee for formerly acceptable conduct after they complained about the racial harassment. (Dkt. No. 1 ¶¶ 40-43.) These allegations are sufficient to support the inference there exists a causal link between Black employees' complaints and Tesla's adverse employment actions.

\* \* \*

In sum, the complaint alleges facts sufficient to plausibly state all three elements of a prima facie retaliation claim. Accordingly, Tesla's motion to dismiss the Commission's retaliation claim is DENIED.

## CONCLUSION

For the reasons stated, Tesla's motions to dismiss and stay are DENIED. The Commission's motion to strike is DENIED as moot. The Court will hold an initial case management conference on May 9, 2024 at 1:30 p.m. via Zoom video. An updated joint case management conference statement is due May 2, 2024.

This Order disposes of Docket Nos. 22, 27, 41.

**IT IS SO ORDERED.**

