UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CONCERNED PASTORS FOR SOCIAL
ACTION, MELISSA MAYS, AMERICAN
CIVIL LIBERTIES UNION OF MICHIGAN,
and NATURAL RESOURCES DEFENSE
COUNCIL, INC.,

        Plaintiffs,                              Case Number 16-10277

v.                                                    Honorable David M. Lawson

NICK A. KHOURI, FREDERICK HEADEN,
MICHAEL A. TOWNSEND, MICHAEL A.
FINNEY, JOEL FERGUSON, SYLVESTER
JONES, R. STEVEN BRANCH, and
CITY OF FLINT,

        Defendants.
_____/

## ORDER GRANTING IN PART STATE DEFENDANTS' MOTION TO TEMPORARILY STAY CITY OF FLINT'S RESTORATION OBLIGATIONS UNDER THE SETTLEMENT AGREEMENT

The City of Flint's failures to live up to several of the promises it made in the March 28, 2017 Settlement Agreement have been well documented. The basic goal of that agreement was to effectuate the replacement of the lead and galvanized service lines that supplied drinking water to a multitude of residential and commercial properties in the City. The Settlement Agreement, which resolved the complaint filed in this case under the Clear Water Act, outlined the several tasks necessary to achieve the ultimate goal, such as identifying the offending infrastructure, contacting residents and obtaining consent to work on their properties, excavating and replacing the service lines, and restoring the property surfaces to their original condition. Deadlines and reporting and record-keeping requirements were put in place to monitor and ensure the timely completion of the work. The State of Michigan, some of whose officials were named as defendants

in the case, agreed to fund the project up to $97 million. The City was responsible for doing the actual work.

Under the original Settlement Agreement terms, the service line replacement work was to be completed by March 28, 2020. That deadline, together with corresponding inspection and reporting deadlines, were modified several times. The City has made considerable, if untimely, progress toward remediating the 31,578 properties identified in the Settlement Agreement. However, in a motion now before the Court to suspend some of those enlarged deadlines, the State defendants represent that approximately 1,901 residences still require restoration. The parties have not agreed on how many properties still require service line replacement under the Settlement Agreement's terms. They estimate that approximately $1.1-1.2 million of the funds committed by the State remain. At an estimated cost of $2,500 per restoration, City officials surmise that completing the remaining work will cost approximately $4,754,000, with additional expenses for project management likely to add to that figure. It does not appear that the City would have the funds or the wherewithal to satisfy its obligations under the Settlement Agreement unless help from outside is found.

Fortunately for the residents of Flint, the State has agreed to provide a lifeline and a way forward. In its motion to stay temporarily some of the City's reporting obligations — which none of the parties oppose — the State has offered to assume responsibility for managing the remaining work and provide the additional funds required. The State is *not* suggesting that the Settlement Agreement be modified further to add requirements that would bind the State defendants. However, at the hearing on the motion on June 25, 2024, the State's attorney assured the Court that the present administration is committed to seeing this project through to completion.

The relief requested by the State parties is slightly vague: they ask the Court to stay temporarily "any work and weekly, monthly, and quarterly reporting obligations that Flint has under the Settlement Agreement (as amended), as well as any orders issued by this Court, solely as to restorations." ECF No. 286, PageID.13403. This request apparently does not extend to the City's obligation to submit the notice, statement, and documents, outlined in Paragraph 7 of the Court's April 2022 Order, which requires the City to notify the settling parties with 14 days of its determination that it has completed all required service line replacements and restorations. *See ibid.*; April 2022 Order, ECF No. 237, PageID.11075. The State defendants add that the parties have agreed that "a goal" of August 1, 2025 is an appropriate target for completing the remaining work, or at least giving an estimate for when that may occur.

Although neither the City nor the plaintiffs oppose the State parties' request for a stay, the plaintiffs' approval is contingent on the State's agreement to provide bimonthly reporting on the restoration efforts. This reporting would include:

> a. An Excel spreadsheet listing all addresses where contractors have completed restoration, including, for each address: (i) the date(s) of restoration; (ii) whether the completed work was soft-surface and/or hard-surface (i.e., asphalt and/or concrete) restoration; and (iii) whether additional restoration work remains required; and
>
> b. the total amount of monies paid by State Parties for work required under the Agreement relating to excavations, replacements, property restoration, and/or program management. This reporting will also include any reimbursements to the City of Flint described in Paragraph 117.c.iv of ECF No. 147-1.

ECF No. 286, PageID.13400-01. The plaintiffs also ask the State to require its contractor continue to conduct the visual inspection, photo documentation, and door hanger efforts, summarized in the Court's February 24, 2023 order, and to make documentation available upon request. Finally, the plaintiffs ask that the State inform the parties within 14 days of the time it believes it has completed

the restoration work, that it provide documentation of that contention, and that the parties use a meet-and-confer process to resolve disputes. The State parties agree to these requests.

Although there may be a dispute over the number of properties where service lines need to be replaced, all parties agree that the bulk of the remaining work involves the City's obligation to restore properties disturbed by an excavation. The State parties ask the Court to "stay any work and the City's weekly, monthly, and quarterly reporting obligations under the Settlement Agreement, or the Court's Orders, solely as to restorations." ECF No. 286, PageID.13399. This Court's past orders regarding restoration indicate that the defendants presently are required to report:

- Monthly, a list of excavated addresses where the City has a record of a completed restoration, a list of excavated addresses where records indicate restoration is still required, and a list of excavated addresses for which the City has no contemporaneous record of restoration and whether a visual inspection had been conducted of that property. Feb. 2023 Order, ECF No. 258, PageID.11695.

- Monthly, any emails or calls received by the City during the reporting period from residents concerning visual inspections. *Id.* at PageID.11696.

- Monthly, the total funding approved for payment for site restoration work based on weekly contractor reports and invoice processing. March 2019 Order, ECF No. 208, PageID.10348.

- Bi-weekly, updates to the plaintiffs regarding when weather conditions occur that would permit it to resume excavation, replacement, or restoration work after the winter season. Feb. 2023 Order, ECF No. 258, PageID.11689.

- Within three days of re-bidding contracts for remaining restoration work, the date it executes each contract. April 2022 Order, ECF No. 237, PageID.11074.

The Court is not aware of any ongoing weekly or quarterly reporting obligations related to restoration.

As the Court has explained several times in previous orders, a settlement agreement in essence is a contract. *Cogent Sols. Grp., LLC v. Hyalogic, LLC*, 712 F.3d 305, 309 (6th Cir. 2013). When enforcing a contract, the first objective is to "honor the intent of the parties," *Rasheed v. Chrysler Corp.*, 445 Mich. 109, 127 n.28, 517 N.W.2d 19, 29 n.28 (1994), and the prime source of that intent is the plain language of the agreement, *Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41, 61, 664 N.W.2d 776, 787 (2003) ("Well-settled principles of contract interpretation require one to first look to a contract's plain language."). Nonetheless, the Settlement Agreement entered by the parties operates as a consent decree — that is, a "settlement agreement subject to continued judicial policing." *Vanguards of Cleveland v. City of Cleveland*, 23 F.3d 1013, 1017 (6th Cir. 1994) (quoting *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983)). A consent decree is "a strange hybrid in the law," *Lorain NAACP v. Lorain Bd. of Educ.*, 979 F.2d 1141, 1148 (6th Cir. 1992) (quoting *Brown v. Neeb*, 644 F.2d 551, 557 (6th Cir. 1981)), in that it is "at once 'a voluntary settlement agreement which could be fully effective without judicial intervention' and 'a final judicial order . . . plac[ing] the power and prestige of the court behind the compromise struck by the parties,'" *ibid.* (quoting *Williams*, 720 F.2d at 920). Consent decrees therefore "may be 'treated as contracts for some purposes but not for others.'" *Ibid.* (quoting *United States v. ITT Cont'l Baking*, 420 U.S. 223, 236 n.10 (1975)).

A court's power to enforce a consent decree includes the "inherent equitable power to modify a consent decree if satisfied that the decree 'has been turned through changing circumstances into an instrument of wrong.'" *Waste Mgmt. of Ohio, Inc. v. City of Dayton*, 132 F.3d 1142, 1146 (6th Cir. 1997) (quoting *United States v. Knote*, 29 F.3d 1297, 1302 (8th Cir. 1994)). The authority to modify such a decree includes the power to suspend its operation.

The parties here all agree that some of the provisions of the Settlement Agreement should be suspended, but those conditions would be temporary and focused on achieving the overarching purpose of the settlement that the parties intended. The State's request for a stay appears calculated to allow it greater freedom to assist the City in completing its outstanding restoration work. The parties all consent to a stay, provided the State makes certain reports discussed above. The relief requested in the motion will advance the better interests of the parties and will be allowed.

Accordingly, it is **ORDERED** that the motion by the State defendants to stay temporarily certain of the City of Flint's restoration obligations under the Settlement Agreement, as modified (ECF No. 286) is **GRANTED IN PART**.

It is further **ORDERED** that:

1. Any obligation that the City has under the settlement agreement or subsequent orders of this Court to conduct and provide weekly, monthly, and quarterly reports on restoration work is stayed until August 1, 2025.

2. The State defendants shall submit to the Court on a quarterly basis until August 1, 2025 a report on the status of their efforts to complete excavations, replacements, and restorations required under the Settlement Agreement.

3. The City of Flint, in consultation with the State defendants, shall submit to the Court and the plaintiffs, **on or before July 10, 2024**, a list of all properties that still have lead or galvanized water service lines, itemized by those properties that are subject to remediation under the Settlement Agreement and those properties known still to have lead service lines but are not subject to remediation under the Settlement Agreement. By that date, the City also shall comply with the final excavation and replacement reporting requirements required by the Order Modifying

Settlement Agreement, *see* ECF No. 237, PageID.11071-73, and the Order Granting Plaintiffs' Fifth Motion to Enforce Settlement Agreement, *see* ECF No. 258, PageID.11686-87.

4. The parties shall submit a report to the Court **on or before July 1, 2025** on the status of the State parties' efforts, and if the excavations, replacement, and restoration work required under the settlement agreement has not been completed by that date, whether the parties have been able to agree on a plan to complete that work.

5. The parties are not required at this time to submit supplementals briefs as required by this Court's February 24, 2023 Order. *See* ECF No. 258, PageID.11688.

6. Beginning on **July 15, 2024**, and on the first and fifteenth day of each month thereafter under August 1, 2025, the State defendants shall provide to the plaintiffs:

a. An Excel spreadsheet listing all addresses where contractors have completed restoration, including, for each address: (i) the date(s) of restoration; (ii) whether the completed work was soft-surface and/or hard-surface (i.e., asphalt and/or concrete) restoration; and (iii) whether additional restoration work remains required; and

b. the total amount of monies paid by State Parties for work required under the Agreement relating to excavations, replacements, property restoration, and/or program management. This reporting will also include any reimbursements to the City of Flint described in Paragraph 117.c.iv of ECF No. 147-1.

7. The State defendants shall require their contractor to continue to conduct the visual inspection, photo documentation, and door hanger efforts, summarized in the Court's February 24, 2023 order, and to make documentation available on request.

It is further **ORDERED** that the City of Flint shall complete all remaining work required by the Settlement Agreement **on or before August 1, 2025**.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated:   June 29, 2024